**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VICTORIA SUE MAXIMOVICH, | ) | CASE NO. 1:24-CV-01448 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE REUBEN |
| | ) | SHEPERD |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER ADOPTING REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

On August 24, 2024, Plaintiff Victoria Sue Maximovich ("Maximovich") filed a complaint seeking review of Defendant Commissioner of Social Security's ("the Commissioner") decision to deny her application for disability insurance benefits ("DIB"). (ECF No. 1). On March 18, 2025, Magistrate Judge Reuben Sheperd issued a Report and Recommendation ("R&R") recommending that the Court affirm the Administrative Law Judge's ("ALJ") decision. (ECF No. 13). The Magistrate Judge concluded that the ALJ identified substantial evidence supporting his residual functional capacity ("RFC") finding and evaluated the medical opinions, prior administrative medical findings, and Maximovich's subjective allegations pursuant to the appropriate legal standards. (*Id.* at PageID #550).

Fed. R. Civ. P. 72(b)(2) provides that the parties may object to an R&R within 14 days after service. Under the Federal Magistrates Act, a district court must conduct a de novo review of those portions of the R&R to which the parties objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Absent objection, a district court may adopt an R&R without further review. *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Maximovich objected to the R&R on March 18, 2025. (ECF No. 14). The Commissioner responded. (ECF No. 15). For the following reasons, the Court **ADOPTS**

the Magistrate's R&R in full and **AFFIRMS** the ALJ's denial of Maximovich's application for disability insurance benefits.

## I. FACTUAL BACKGROUND

### A. Maximovich's Complaint

Maximovich appealed the ALJ's determination, claiming that the ALJ's factual findings and legal conclusions were not supported by substantial evidence and were contrary to law and regulation. (ECF No. 1, PageID #1). In her brief on the merits, Maximovich more specifically alleged that "[t]he ALJ failed to identify substantial evidence supporting the [RFC] finding and failed to evaluate medical opinions, prior administrative medical findings, and Plaintiff's allegations pursuant to the appropriate legal standards." (ECF No. 13, PageID #485). As the R&R clarifies, Maximovich divided this argument into three sub-arguments: (1) the ALJ's RFC determination lacks substantial evidence (*see* ECF No. 9, PageID #490–99); (2) the ALJ failed to evaluate her subjective complaints pursuant to SSR 16-3p (*see id.* at PageID #499–506); and (3) the ALJ failed to consider all medical evidence (*see id.* at PageID #502). (ECF No. 13, PageID #543).

### B. Maximovich's Disabilities

Maximovich first sought DIB on June 30, 2022, alleging a disability onset date of August 22, 2019. (Tr.[1] 70). Maximovich alleged inability to work due to spinal stenosis, arthritis, disc herniation, blood clots, obesity, anxiety, and hearing loss. (*Id.*). After Maximovich's claims were denied both initially and on reconsideration, she requested a hearing before the ALJ. (Tr. 102). Maximovich and a vocational expert testified before the ALJ on July 5, 2023. (Tr. 31–60). On August 30, 2023, the ALJ issued his written decision. (Tr. 18–30).

[1] The transcript of the record appears in ECF No. 8.

The ALJ listed Maximovich's fibromyalgia, lumbar degenerative disc disease, and obesity as severe impairments, stating that these impairments "significantly limit [Maximovich's] ability to perform basic work activities as required by SSR 85-28." (Tr. 21). The ALJ noted that Maximovich's medical records reference additional problems, like a history of knee sprain, depression, and anxiety, but stated that there were "no objective findings necessary to make these medically determinable impairments." (*Id.*).

## II. PROCEDINGS BEFORE THE ALJ

### A. Evidence

Upon its review of the record, the Court finds that the R&R accurately states Maximovich's personal, educational, and vocational evidence (Section III.A.); the relevant medical evidence (Section III.B.); the "unexhibited" medical evidence (Section III.C.); the medical opinion evidence (Section III.D.); and the administrative hearing evidence (Section III.D.). The Court therefore **ADOPTS** the portion of the R&R titled "Evidence" (Section III) and references those matters as if fully rewritten in this Order. (ECF No. 13, PageID #532–40).

### B. The ALJ Decision

The ALJ applied the five-step framework set forth in 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determined that Maximovich did not engage in substantial gainful activity during the period from her alleged onset date (August 22, 2019) through her last insured date (December 31, 2020). (Tr. 21). At step two, the ALJ found that Maximovich has the following severe impairments: fibromyalgia, lumbar degenerative disc disease, and obesity. (*Id.*). The ALJ also noted that the record referenced concerns related to depression, anxiety, and a history of knee sprain, but there were "no objective findings necessary to make these medically determinable impairments." (*Id.*).

At step three, the ALJ concluded that Maximovich did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in the Code of Federal Regulations. (Tr. 21). Maximovich's impairments did not meet the criteria of listing 1.15, disorders of the skeletal spine resulting in a compromise of a nerve root[2], because the ALJ found she did not exhibit:

> (A.) a neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with the compromise of the affected nerve root with Pain, Paresthesia, or Muscle Fatigue, AND (B.) a radicular distribution of neurological signs present during a physical examination or a diagnostic test and evidenced by 1, 2, and either 3 or 4: (1) muscle weakness; and (2) sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; and (3) sensory changes evidenced by decreased sensation, sensory nerve deficit on electro diagnostic testing, or decreased deep tendon reflexes, AND (C.) findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine, AND (D.) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 month, and medical documentation of at least one of the following: (1) a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

(Tr. 21–22). The ALJ also concluded that Maximovich did not meet criteria for listing 1.16, lumbar spinal stenosis resulting in a compromise of the cauda equine, because she did not demonstrate symptoms of neurological compromise. (Tr. 22). Upon consideration of the entire record, the ALJ concluded that Maximovich "has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)," subject to the following limitations: she can occasionally climb ramps or

[2] Listing 1.15 appears in the Social Security Administration List of Impairments.

stairs; perform occasional stooping, kneeling, and crouching; cannot crawl or climb ladders, ropes, or scaffolds; cannot be exposed to unprotected heights or moving mechanical parts; and cannot perform commercial driving. (*Id.*).

The ALJ found that Maximovich's medically determinable impairments could reasonably cause the symptoms she described. (Tr. 24). Even so, he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not wholly consistent with the medical evidence. (*Id.*). The ALJ concluded that her continuing activities, limited treatment seeking, and conservative care, and reports and objective examinations found in medical records, support less severe limitations than alleged. (*Id.*). He thus found that she could perform a reduced range of light work, with postural and environmental limitations given her fibromyalgia, back issues, and obesity. (*Id.*).

The ALJ noted Maximovich's statements that she cannot go to the second floor of her home due to her pain and leg instability, and that she cannot sit, stand, or walk for longer than 15 to 20 minutes without her back seizing up. (Tr. 23). He also noted her ability to perform household tasks such as cooking and dishwashing, albeit slowly, with a barstool to sit on and with frequent breaks, and her role as caregiver to her 10-year-old granddaughter and 11-year-old grandson. (*Id.*).

The ALJ acknowledged Maximovich's claim that the procedures she underwent between 2014 and 2016 did not provide significant back-pain relief. (*Id.*). The ALJ also observed that medical records showed medication helped her pain; exam reports from October 2019 showed that the pain was controlled and stable, requiring no further treatment. (*Id.*). He noted that her physical exam from October 2019 revealed no significant abnormalities, with a normal range of motion. (*Id.*). Her October 2020 exam indicated lumbar/sacroiliac tenderness and some diminished reflexes but a normal gait, intact sensation, and 5/5 strength throughout. (*Id.*).

Despite concluding that "there is not considerable evidence supporting fibromyalgia under SSR 12-2p," the ALJ found that fibromyalgia was a severe impairment based on the record and Maximovich's subjective complaints. (*Id.*). The ALJ also noted Maximovich's BMI was 43.48, which is obese, and stated he considered the "exacerbating effect of the claimant's obesity on other impairments as required by SSR 12-2p." (Tr. 24). He stated, however, that there is no recorded evidence that these effects resulted in "greater limitations than set forth in the residual functional capacity above." (*Id.*).

The ALJ concluded that, through the date last insured, Maximovich could perform past relevant work as a customer order clerk and assistant manager. (Tr. 25). This conclusion was based on the vocational expert's testimony, along with a comparison of Maximovich's RFC and the physical and mental demands of those positions. (*Id.*). The ALJ further concluded, based on the VE's testimony, that Maximovich could successfully adjust to other work available in the national economy, including work as a cashier, sales attendant, and housekeeper. (Tr. 26). Therefore, the ALJ determined that Maximovich is not disabled.

## III. PROCEDURAL POSTURE

### A. The R&R

After reviewing each of these claims, the Magistrate Judge affirmed the Commissioner's decision, concluding that:

1. The ALJ's finding is supported by substantial evidence and is appropriately tied to medical evidence, not based merely on a lay opinion. (ECF No. 13, PageID #543–46).

2. The ALJ did not err in his evaluation of Maximovich's subjective allegations under SSR 16-3p and adequately considered all evidence in his assessment. (*Id.* at PageID #546–49).

3. The additional objective evidence that Maximovich argued must be evaluated by the ALJ upon remand does not meet the criteria for remand under sentence six of 42 U.S.C. § 405(g). (*Id.* at PageID #549–50).

The Magistrate Judge rejected Maximovich's first claim, finding that the ALJ adequately tied his findings to medical evidence rather than forming a lay opinion. (*Id.* at PageID #545). The R&R highlighted the ALJ's citation of notes and exam results from Maximovich's medical history between 2019 and 2022 indicating 5/5 strength, normal muscle tone, normal range of motion, and stable pain levels controlled by medication. (*Id.*). It also explains that, while Maximovich argued for a more restrictive RFC, "a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC based on all of the relevant medical and other evidence of record." (*Id.*) (quoting *Harris v. Comm'r of Soc. Sec.*, No. 1:13-cv-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014) (cleaned up). Lastly, the Magistrate Judge stated that the ALJ was under no obligation to obtain a medical expert; it was within the ALJ's purview to interpret the medical evidence related to a claimant's impairments. (*Id.* at PageID #545–46).

The Magistrate Judge also concluded that the ALJ did not err in finding that the record demonstrated "limited treatment seeking and conservative care." (*Id.* at PageID #548). According to the R&R, the ALJ cited sufficient evidence supporting his position; the ALJ observed that there is only one recorded instance of treatment for the conditions in question during the relevant time period. (*Id.*). Moreover, the Magistrate Judge explained that the ALJ's evaluation of subjective statements regarding intensity, persistence, and limiting effects of symptoms is "a determination specifically reserved for the ALJ and entirely consistent with an ALJ's role." (*Id.*). The Magistrate Judge therefore concluded the ALJ properly evaluated Maximovich's subjective statements and stated that Maximovich's argument improperly asks the Court to "reweigh the evidence." (*Id.* at PageID #548–49).

The Magistrate Judge also rejected the claim that additional objective evidence was improperly excluded from the ALJ's evaluation of Maximovich's claims, since that evidence does not meet criteria for remand under sentence six of 42 U.S.C. § 405(g). (*Id.* at PageID #549). The R&R concluded that Maximovich "has not demonstrated how imaging from four to six years prior" is chronologically relevant to the claimed disability onset of August 22, 2019. (*Id.* at PageID #550). Maximovich also did not demonstrate how these records were probative. (*Id.*). They indicate "mild degenerative changes, minimal/minor osteoarthritis, and degenerative disc disease." (*Id.*). The ALJ already found degenerative disc disease to be a severe impairment. (*Id.*). These records do not negate the finding that there was "minimal treatment seeking and conservative care." (*Id.*). Therefore, the Magistrate Judge found no basis for a sentence six remand. (*Id.*).

The Magistrate Judge found that "the record was not absent an opinion of the state agency reviewers: rather it was their opinion that there was insufficient medical evidence on record to evaluate Maximovich's alleged impairment, a valid conclusion for the agency reviewer to draw." (*Id.* at PageID #546). The Magistrate Judge explained that the ALJ was not required to seek a medical expert to evaluate the medical evidence, as it is the role of the ALJ himself to evaluate the medical and non-medical evidence. (*Id.* at PageID #545–46).

**B. Maximovich's Objections to R&R**

Maximovich first argues that the Magistrate Judge erred in finding the ALJ's determination of RFC to perform "light work" was supported by substantial evidence, since the ALJ failed to build a "logical bridge" between the evidence and his findings. (ECF No. 14, PageID #559). According to Maximovich, "[t]he fact that the ALJ summarized evidence does not equate to the ALJ identifying the evidence supporting his findings"; the ALJ failed to identify specific evidence justifying findings of capacity to perform light work, including standing and walking for up to six

hours of an eight-hour workday, pushing, pulling, and often lifting or carrying objects up to 10 pounds. (*Id.* at PageID #554; 559). Maximovich claims that the rationale behind the given "extent of limitations" relating to hazards, commercial driving, climbing, and certain postural activities was also unexplained. (*Id.* at PageID #554). Maximovich argues that "Judge Sheperd's quotation of the evidence allegedly supporting and explaining the RFC finding does not actually explain any portion of the RFC finding." (*Id.* at PageID #558).

Second, Maximovich continues to assert that the ALJ improperly relied on his own interpretation of medical data. (*Id.* at PageID #559). Maximovich does not dispute that state medical reviewers could conclude "there was insufficient medical evidence of record to evaluate Maximovich's alleged impairment." (*Id.*). Rather, Maximovich argues that this conclusion did not support the ALJ's final determination. (*Id.*). She claims that the Magistrate Judge's analysis contradicted the ALJ's original finding that the State agency reviewers "'offered no medical opinions to be evaluated.'" (*Id.*). Since there was no medical opinion in the record regarding Maximovich's physical limitations, the ALJ relied on his own interpretations and "formulated an RFC finding without the benefit of a medical opinion." (*Id.*).

Third, Maximovich argues that the Magistrate Judge erred in assessing the exclusion of earlier diagnostic imaging from the record based on the criteria of sentence six of 42 U.S.C. § 405(g). (*Id.* at PageID #555). Instead, Maximovich argues that remand is required under sentence four. (*Id.*). She reasons that, since the ALJ did not consider the excluded evidence, the RFC determination was not based on all relevant medical evidence. (*Id.*). She claims that the excluded evidence was relevant because it supports claims of a left-hip and knee impairment originally rejected by the ALJ for a lack of supporting objective evidence. (*Id.* at PageID #556).

Maximovich argues that "the Court cannot speculate that the additional evidence would have no impact on the decision given that the omitted evidence contradicts multiple findings made by the ALJ." (*Id.* at PageID #556). According to Maximovich, the evidence was not submitted to the Court but was in the Commissioner's possession since at least June 26, 2024. (*Id.* at PageID #557). Neither the Court nor Appeals Council explained why they rejected the evidence. (*Id.*). She therefore argues that the Magistrate Judge's labeling of this evidence as immaterial to the outcome is a "post hoc evaluation of the evidence," rather than a proper evaluation of the ALJ's reasoning. (*Id.*).

Lastly, Maximovich claims that the ALJ erred in his evaluation of her subjective allegations by failing to explain which statements were inconsistent with the medical record or his basis for discrediting these statements pursuant to the applicable factors stated in 20 C.F.R. § 404.1529(c)(3)(i)–(vii). (*Id.* at PageID #560). She argues that the record and her testimony state that she could not remain in one position for longer than 15 minutes and standing and walking increased her pain. (*Id.* at PageID #563). The ALJ "does not specify which statements of Plaintiff . . . are inconsistent with the medical record," nor "why he chose to discredit the statements with respect to the applicable factors stated in 20 C.F.R. § 404.1529(c)(3)(i)–(vii)." (*Id.* at PageID #560). Maximovich argues that the ALJ did not explain why he concluded that Maximovich sought only "conservative care" for her ailments; neither the ALJ nor Judge Shepard acknowledge that prior treatment was ineffective or "identify how Plaintiff could treat more aggressively." (*Id.* at PageID #561).

Maximovich claims that the ALJ did not identify specific medical evidence inconsistent with her testimony regarding her pain and need to change positions often. (*Id.* at PageID #560). Maximovich also argues that this error was not harmless because her inability to hold any one

position for long periods could "erode the occupational base for light and sedentary work completely." (*Id.* at PageID #563). Though the VE testified that there were "select light jobs" that a person like Maximovich could perform, he did not identify those jobs. (*Id.* at PageID #564).

### C. The Commissioner's Response

The Commissioner responds that the Magistrate Judge properly concluded the RFC finding was supported by substantial evidence, reflected sufficient consideration of Maximovich's subjective statements, and correctly concluded that the unexhibited medical records did not warrant remand. (ECF No. 15, PageID #566). The Commissioner also notes that the "Plaintiff's current criticisms are the same already rejected by the magistrate judge and they are no more compelling the second time." (*Id.*).

## IV. LEGAL STANDARD

### A. Review of Objections to R&R

A district court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of facts and recommendations" for matters including review of the Commissioner of Social Security's final decision on disability insurance benefits. 28 U.S.C. § 636(b)(1)(B). The Court reviews specific objections to findings in the report and recommendation de novo. *Orr v. Kelly*, No. 1:14–cv–2302, 2015 WL 5316216, at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell v. United States,* No. 94–5441, 1994 WL 532926, at *1 (6th Cir. 1994)). When reviewing a report and recommendation de novo, the court must review at least the evidence that was before the Magistrate Judge. *Nasser v. Comm'r of Soc. Sec.*, 598 F. Supp. 3d 614, 621 (E.D. Mich. 2022), *aff'd*, No. 22–1293, 2022 WL 17348838 (6th Cir. 2022). The court may then accept, reject, or modify, in whole or in part, the findings, or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1).

General objections, and those which merely restate arguments previously presented, do not require review by the district court. *Aldrich v. Bock,* 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Mere disagreement with the Magistrate Judge's conclusions without identifying specific legal error is also insufficient. *Tucker v. Perry*, No. 1:21–cv–00073, 2023 WL 5022668, at *1 (M.D. Tenn. Aug. 7, 2023). A specific objection "explain[s] and cite[s] specific portions of the report," thus alerting the court to the Magistrate Judge's exact alleged errors. *Latrice D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-115-RGJ, 2023 WL 2429494, at *2 (W.D. Ky. Mar. 9, 2023) (quoting *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007)) (alterations in original). A non-specific or repetitive objection "results in a duplication of effort on the district court's part" and wastes judicial resources, "[running] contrary to the purpose of the Magistrates Act." *Rincon v. Comm'r of Soc. Sec.*, No. 14-CV-12098, 2016 WL 922945, at *1 (E.D. Mich. Mar. 11, 2016) (quoting *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

**B. Standard for Finding Disability**

An ALJ employs a five-step sequential process to determine whether a person is disabled. 20 C.F.R. 416.920(a)(4); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). As the Sixth Circuit has explained:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d) (2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work,

> if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

An ALJ evaluates a claimant's subjective report of her symptoms through a two-step process: First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment," i.e., an impairment "which can be shown by medically acceptable clinical or laboratory diagnostic techniques," that "could reasonably be expected to produce the claimant's pain or other symptoms." SSR 16-3p, 2016-1 C.B. 165. Second, if the ALJ finds a medically determinable impairment, the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." *Id.* Whenever statements regarding such effects are "not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." *Id.*

An ALJ must consider "the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate symptoms; the claimant's efforts to alleviate her symptoms; and any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms." *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021), *report and recommendation adopted*, No. 1:20-CV-1304, 2021 WL 2381906 (N.D. Ohio June 10, 2021). "An ALJ is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's statements about her symptoms when they are inconsistent with objective medical and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Yet "[if] an ALJ discounts or rejects a claimant's subjective complaints, he must clearly state his

reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The decision "'must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the ALJ evaluated the claimant's symptoms." *Harper*, 2021 WL 2383833, at *11.

At step four, if the claimant's impairments do not meet or medically equal a listed impairment, the ALJ will assess and make an RFC finding based on all relevant medical and other evidence on record and the claimant's testimony. 20 C.F.R. § 404.1520(e). A claimant's RFC describes the most she can do with her limitations. 20 C.F.R. § 404.1545(a)(1). By comparing the RFC finding to physical and mental demands of the claimant's past relevant work, the ALJ determines whether a claimant can perform her past relevant work. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e).

In steps one through four, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Pettway v. Comm'r of Soc. Sec.*, No. 18-10318, 2019 WL 3315381, at *3 (E.D. Mich. June 30, 2019), *report and recommendation adopted*, No. 2:18-CV-10318, 2019 WL 3306746 (E.D. Mich. July 23, 2019). At step five, the Commissioner must produce evidence that the claimant could perform other work in the national economy given her RFC and "relevant vocational factors." 20 C.F.R. § 404.1512(a). If the claimant carries her burden, the burden shifts to the Commissioner to prove that there are jobs the claimant can perform within her limitations. *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir.2006).

**C. Review of Social Security Decisions**

A court reviewing the ALJ's decision must determine whether it is supported by substantial evidence and whether the ALJ applied proper legal standards. 42 U.S.C. 405(g) ("The findings of

the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence" is a low threshold: "more than a scintilla . . . but less than a preponderance." *Brainard v. Sec'y of Health & Hum. Servs.,* 889 F.2d 679, 681 (6th Cir.1989). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, the ALJ's decision will not be disturbed if it is also supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

The district court's review is limited to the record. *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *3 (E.D. Mich. Nov. 1, 2012). The reviewing court may not resolve evidentiary conflicts or weigh witness credibility anew. *Id.* at 476. If the ALJ applied the correct legal standard and substantial evidence supports her conclusion, the district court must uphold the decision of the ALJ, even if it disagrees with the outcome. *Arnett v. Comm'r of Soc. Sec.*, 76 F. App'x 713, 716 (6th Cir. 2003). This is because the Commissioner enjoys a "zone of choice" to decide between the parties' competing positions "without the fear of appellate court interference." *Id.*

That said, the district court cannot affirm a decision that does not apply the proper legal standard unless that error is harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). The same is true if the ALJ's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). The fact that the record contains substantial

evidence supporting the ALJ's decision "does not justify [his] failure to adequately articulate his reasons." *Shrader*, 2012 WL 5383120, at *6.

If the ALJ does not discuss relevant evidence, the district court cannot discern whether the ALJ discounted or overlooked the evidence. *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *20 (N.D. Ohio Mar. 8, 2021). An ALJ may not overlook or ignore contrary lines of evidence. *Id; see, e.g.*, *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error when the ALJ was "selective in parsing the various medical reports"); *Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light.").

## V. DISCUSSION

### A. ALJ's Decision Not to Obtain Medical Expert

First, Maximovich's objection to the ALJ's determination of her RFC without a medical opinion repeats an argument already resolved by the Magistrate Judge: he considered whether the ALJ was required to seek a medical expert's evaluation and decided that the ALJ was not required to do so. (ECF No. 13, PageID #545–#546). The Court will not duplicate that analysis. *See Rincon v. Comm'r of Soc. Sec.*, No. 14-CV-12098, 2016 WL 922945, at *1 (E.D. Mich. Mar. 11, 2016) (explaining that the district court should not waste judicial resources by duplicating the magistrate judge's review).

The R&R's reference to Maximovich's evidentiary burden to show her entitlement to benefits does not affect the soundness of the Magistrate Judge's analysis. Though she claims that the Magistrate Judge "describes the legal issues as a burden of proof issue rather than addressing the legal errors present in this case" (ECF No. 14, PageID #554), this Court's review did not reveal

such an error. The R&R explains the state of the law governing an ALJ's RFC determination. (ECF No. 13, PageID #543–44). It states that the ALJ need not "advance the claimant's case" and Maximovich bears "the ultimate burden of proving entitlement to benefits." (*Id.*) (citing *first Richardson v. Perales*, 402 U.S. 389, 410 (1971) *then Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022)).

This law appears directed to Maximovich's complaint that the ALJ did not have a medical opinion to consider, since the state agency physicians did not issue one and the ALJ did not obtain a medical expert; indeed, whether or not she should have, Maximovich could have obtained a medical opinion for the record. Nothing about that affects the Magistrate Judge's review of the ALJ's decision and conclusion that the cited portion of that decision ties the RFC determination to medical evidence, discussed later in this opinion.

**B. Exclusion of Medical Evidence From 2014–2019**

Maximovich also objects to the Magistrate Judge's assessment of the diagnostic imagery from 2014–2019 on the criteria of sentence six of 42 U.S.C. § 405(g), arguing that remand is instead required under sentence four. (ECF No. 13, PageID #543). This argument was never presented to the Magistrate Judge. Maximovich sought a sentence six remand in her merits brief. (ECF No. 9, PageID #502). The Magistrate Judge's Act, 28 U.S.C. § 631 *et seq.* does not permit parties to raise new arguments to the district judge that had not been raised before the magistrate judge. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). The Court therefore declines to review this argument.

**C. The ALJ Articulated a Logical Bridge in Evaluation of Subjective Statements**

Maximovich objects to the Magistrate Judge affirming the ALJ's evaluation of her subjective statements regarding the intensity, persistence, and limiting effects of her symptoms.

(ECF No. 14, PageID #560). She also argues that the ALJ failed to create a logical bridge from the evidence to his findings regarding an RFC for light work. (*Id.* at PageID #559). Maximovich claims that the ALJ did not fully explain his reasons for discounting statements regarding her inability to hold a position for longer than 15 minutes, difficulties standing and walking, and her reported pain level of 8 out of 10; if accepted by the ALJ, these claims would be inconsistent with finding an ability to perform light work. (*Id.* at PageID #564). She alleges that the Magistrate Judge erred in accepting the ALJ's "summarization of the record" as an adequate articulation of reasoning to support an accurate and logical bridge between his RFC finding and the evidence. (*Id.* at PageID #558).

The Court is not persuaded that the ALJ's decision (and Magistrate Judge's R&R) are deficient. First, Maximovich again asks for another bite at the apple; this issue was considered and decided by the Magistrate Judge, and the error alleged on the part of the Magistrate Judge is essentially its decision to accept the ALJ's decision as-is. (*See* ECF No. 13, PageID #546–49). This is not a proper objection to the R&R. *Rincon v. Comm'r of Soc. Sec.*, No. 14-CV-12098, 2016 WL 922945, at *1 (E.D. Mich. Mar. 11, 2016).

That said, the ALJ's decision does more than simply recite the medical evidence in the record. The ALJ explained, when making his RFC finding, that some of the medical evidence established Maximovich's impairments, such as the receipt of injections, blocks, and a radiofrequency ablation; throbbing upper- and lower-back pain; morbid obesity; lumbar/sacroiliac tenderness; diminished reflexes; and pain in her lower sacral spine and left hip, which is aggravated by activity and motion. (Tr. 23–24). The ALJ then explained that the medical records *also* show improvements in Maximovich's condition: her back pain responded to prescription medications; her pain was generally controlled, and she did not seek more invasive treatments; her weight was

not linked to any musculoskeletal concerns and she showed a normal range of motion; she consistently showed a normal gait, intact sensation, and 5/5 strength; following an injection, her pain reduced to a stable 4/10; and the medical records do not indicate "that the impact on musculoskeletal, respiratory, cardiovascular, or other body system functioning results in greater limitations than set forth in the [RFC] above, and the impact of obesity was considered in finding the claimant limited to a restricted range of light work activity." (*Id.*). This is a direct connection between the medical evidence and the ALJ's RFC decision.

Regarding Maximovich's subjective statements, the evaluation of subjective symptom statements is "a determination expressly reserved for the ALJ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997) (quoting 20 C.F.R. § 404.1529(a)). If "objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record.'" *Workman v. Comm'r of Soc. Sec.,* 105 F. App'x. 794, 800–01 (citing *Walters,* 127 F.3d at 531). When the ALJ decides the persuasiveness of a claimant's subjective symptom statements, he must consider factors such as "the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and '[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.'" (ECF No. 13, PageID #546) (citing and quoting SSR 16-3p, 2017 WL 5180304, at *7–*8). The ALJ need not analyze a claimant's subjective symptom statements against every factor; he need

only sufficiently articulate his evaluation of the evidence to afford meaningful judicial review. *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The ALJ's analysis of Maximovich's subjective symptom statements tracks the SSR 16-3p factors. He looked at Maximovich's daily activities (Tr. 23); location, duration, and frequency of her pain (*id.*); and the medications and treatment she's received (*id.*). The ALJ compared those factors with the objective medical evidence from the relevant time period. (*Id.* at 23–24). He then concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by the overall evidence of record, which supports less limitations. Considering the claimant's continuing activities, limited treatment seeking and conservative care, as well as reports to medical personnel, and objective examination findings, the claimant has the ability to perform a reduced range of light work, as found in the residual functional capacity above. Given her fibromyalgia, back issues, and obesity, the undersigned included postural and environmental limitations, including no crawling or climbing of ladders, ropes, or scaffolds, as well as no exposure to unprotected heights or moving mechanical parts and commercial driving. Regardless, the claimant's allegations are inconsistent with the overall evidence of record, which supports not nearly as severe limitations as alleged.

(Tr. 24). As the Magistrate Judge explained, the record *does* support a history of limited treatment seeking and conservative care. (ECF No. 13, PageID #548). The ALJ properly considered Maximovich's subjective symptom statements, the SSR 16-3p factors, and the objective medical evidence, and fairly concluded that Maximovich's limitations are not as severe as alleged. (Tr. 24).

Moreover, the cases upon which Maximovich relies are materially distinguishable from this case. *See, e.g.*, *Steiner v. Comm'r of Soc. Sec.*, No. 5:23-cv-99, 2023 WL 5647254, at *13 (N.D. Ohio Aug. 16, 2023) (concluding that the ALJ's decision was "faulty" because the ALJ (1) omitted facts from his analysis, (2) called the claimant's condition "relatively stable" without explaining what the term "stable" was "relevant" to; and (3) contradicted himself, suggesting that the claimant had improved over time while explicitly stating that the claimant worsened over time during the relevant period"); *Cross v. Comm'r of Soc. Sec.*, 2022 WL 574260 (N.D. Ohio Feb. 25, 2022) (remanding because the ALJ's decision did not explain why the ALJ did not address certain evidence); *Davies v. Comm'r of Soc. Sec.*, No. 5:25-cv-2807, 2021 WL 6053925, at *9 (N.D. Ohio Nov. 24, 2021) (remanding because the ALJ did not explain why her final RFC determination did not include certain restrictions recommended by state agency consultants).

The same problems do not attend the ALJ's decision here. Though the ALJ calls Maximovich's condition "stable," the ALJ uses "stable" as a doublet for "controlled." (Tr. 23). The surrounding phrases provide that context: Maximovich told her treating providers that she did not need further injections and that her pain was helped by medication. (*Id.*). This differs from the use of "stable" in *Steiner*, which contains no similar contextual references. 2023 WL 5647254, at *13.[3] This also is not a case, like *Cross* or *Davies*, in which the ALJ ignored evidence or recommendations from the relevant time period. In all, the Court agrees with the Magistrate Judge that the ALJ considered the relevant evidence and arrived at a reasoned RFC conclusion in light of both the objective medical evidence and Maximovich's subjective symptom statements (to the extent they were credible).

[3] The ALJ's decision in *Steiner* states: "In terms of her mental symptoms, the claimant had ongoing mood and anxiety symptoms throughout the relevant period. Her condition appeared relatively stable during the early portion of the relevant period but she had increased symptoms in early 2022, leading to a brief hospitalization followed by an intensive outpatient treatment program." 2023 WL 5647254, at *13.

## VI. CONCLUSION

Maximovich's objections to the R&R are **OVERRULED**. The Court **ADOPTS** the R&R in full. The ALJ's decision denying Maximovich's application for disability insurance benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

Date: October 1, 2026

Charles Fleming

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**